UNIVERSAL UNDERWRITERS, by LYNN UNDERWRITING COMPANY, its Attorney in Fact, Appellant, v. ROGAN, Commissioner of Insurance, Respondent.

*March 2—April 7, 1959.*

For the appellant there was a brief by *Schlotthauer & Jenswold* of Madison, and oral argument by *George McD. Schlotthauer.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

A brief was filed by *Wheeler, Van Sickle, Day & Goodman,* and *Joseph Goodman* and *Daniel A. Milan,* all of Madison, as *amici curiae.*

MARTIN, C. J.    The policy in question, under Coverages A and B, insures against bodily injury and property-damage liability "caused by accident and arising out of the hazards hereinafter defined." Division 1 under "Definition of Hazards" provides:

"The ownership, maintenance, or use of the premises for the purpose of an automobile sales agency, repair shop, serv-

ice station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance, or use of any automobile in connection with the above-defined operations, and the occasional use for other business purposes and the use for nonbusiness purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above-defined operations, and (2) any automobile owned by the named insured in connection with the above-defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person."

Under "III Definition of Insured," the policy further provides:

"With respect to the insurance under coverages A, B, and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director, or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. This policy does not apply:

"(a) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the business of such employer;

"(b) to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him, or by a member of his household other than the named insured;

"(c) under coverage B, to any partner or employee with respect to injury to or destruction of property owned by, rented to, in charge of or transported by the named insured."

Indorsement form GL–LAI amends the "Definition of Insured" provisions of the basic policy form as follows:

"The unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director, or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in this business of the named insured covered by this policy, and (2) any partner, or employee or director or stockholder thereof or a member of the household of the named insured or such partner or employee or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and (3) any other person or organization legally responsible for the use thereof only while such automobile is operated by the named insured or any such partner or employee or director or stockholder or member of the household of the named insured or partner or employee or director or stockholder, provided the actual use of the automobile is by the named insured or with his permission. This policy does not cover:

"(a) any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the business of such employer;

"(b) any partner, employee, director, stockholder, or additional insured with respect to any automobile owned by him, or by a member of his household other than the named insured;

"(c) any person or organization with respect to any automobile loaned by or borrowed from the named insured except while such automobile is operated by the named insured or any partner, employee, director, stockholder, or member of the household of the named insured or such partner, employee, director, or stockholder;

"(d) under Coverage B, any partner or employee with respect to injury to or destruction of property owned by, rented to, in charge of, or transported by the named insured."

The policy form and indorsement were filed with the defendant Commissioner of Insurance who declined to ap-

prove the same for the reason that they violate the provisions of sec. 204.30 (3), Stats. That section of the statutes reads as follows:

"No such policy shall be issued or delivered in this state to the owner of a motor vehicle, unless it contains a provision reading substantially as follows: The indemnity provided by this policy is extended to apply, in the same manner and under the same provisions as it is applicable to the named assured, to any person or persons while riding in or operating any automobile described in this policy when such automobile is being used for purposes and in the manner described in said policy. Such indemnity shall also extend to any person legally responsible for the operation of such automobile. The insurance hereby afforded shall not apply unless the riding, use or operation above referred to be with the permission of the assured named in this policy, or if such assured is an individual, with the permission of an adult member of such assured's household other than a chauffeur or domestic servant, such permission in both cases to be deemed permission without regard to sec. 85.08 (39) or to whether the riding, use or operation is authorized by law; but no insurance afforded by this paragraph shall apply to a public automobile garage or an automobile repair shop, sales agency, service station and the agents or employees thereof. In the event an automobile covered by this policy is sold or transferred the purchaser or transferee shall not be an additional insured without consent of the company, indorsed hereon."

Formal proceedings were requested by appellant so that the commissioner's order would have a status subject to judicial review, and in compliance with such request the commissioner issued an order dated October 11, 1956, ordering appellant to cease and desist from issuing said policy and indorsement in this state. Hearing was had before the commissioner and subsequently a final order was issued which became the subject of review by the circuit court.

The record shows that the commissioner's refusal to approve the policy form and indorsement was based upon the

reason that "when the garage liability policy is extended to cover nonbusiness use of insured vehicles then the policy must provide omnibus coverage in accordance with section 204.30 (3), Wisconsin statutes."

Prior to the enactment of the Casualty Rating Law, ch. 521, Laws of 1947, secs. 204.37 to 204.54, Stats., which became operative on January 1, 1948, the department of insurance had no power or authority to approve or disapprove policy forms or rates. Generally, the pattern of said enactment is that every insurer must file with the commissioner every manual of classifications, rules and rates, every rating plan, and every modification of any of the foregoing, and that the same shall be on file for a waiting period of fifteen days before it becomes effective. It is provided that such a filing shall be "deemed" to meet the requirements of the law unless it is disapproved by the commissioner within such waiting period. Sec. 204.40 (1) and (4). It is provided in sec. 204.41 (1) (a) that if the commissioner finds during such waiting period that the filing does not meet the requirements of the law, he shall give the insurer filing the same written notice of his disapproval thereof. Sub. (4) (a) provides that any person aggrieved thereby may then make written application to the commissioner for a hearing and if, after the hearing, the commissioner finds that the filing does not meet the requirements of the law, he shall issue an order to such effect and that the same shall no longer be effective. It is also provided in sec. 204.41 (3) that at any time subsequent to the review period, the commissioner may disapprove a filing but he may do so only after holding a hearing thereon. Any such order issued after a hearing is then subject to review under the provisions of ch. 227, Stats.

Administration of the provisions of the new Rating Law presented a task on the part of the department of insurance of such scope that a considerable amount of time was involved in putting the new laws into operation. A program

for the administration of the new laws gradually developed, in the course of which a formal rule was finally adopted by the commissioner, effective August 1, 1958, providing that no forms are to be used or issued in this state as a part of any contract of insurance unless such form has been filed with the commissioner; and further providing that forms not now on file shall be filed as required and may be continued to be used until such time as they may be disapproved. Sec. Ins 6.05 (3), 4 Wis. Adm. Code.

The question on this appeal involves the application to appellant's so-called garage liability policy of the following language of sec. 204.30 (3), Stats.:

". . . but no insurance afforded by this paragraph shall apply to a public automobile garage or an automobile repair shop, sales agency, service station and the agents or employees thereof."

This language, which embodies an exception to the requirement of omnibus coverage, has been applied in two different situations. It has been held by this court that the omnibus coverage clause in the ordinary privately owned automobile liability policy does not extend coverage to a public garage or its employees, which may be operating the car when an accident occurs. *Paine v. Finkler Motor Car Co.* (1936), 220 Wis. 9, 264 N. W. 477; *Ederer v. Milwaukee Automobile Ins. Co.* (1936), 220 Wis. 635, 265 N. W. 694.

The other situation involves the application of sec. 204.30 (3), Stats., to garage liability policies. In *Mauel v. Wisconsin Automobile Ins. Co.* (1933), 211 Wis. 230, 248 N. W. 121, the question was whether a garage liability policy afforded coverage to a third person for injuries received while riding in a car belonging to garage owners loaned by them to a prospective purchaser of such car. This court held that it did not and that the third party was not an additional

insured because the omnibus coverage provisions of the statute do not apply to public garages. Appellant relies principally upon this case to support its contention that neither the policy form nor the indorsement in question is in conflict with the omnibus coverage statute but come within the exception stated therein. Resorting to the cases and briefs in the *Mauel Case,* appellant points out that the garage policy there involved included coverage "for pleasure use." However, it is significant that no argument was presented that coverage for pleasure use rendered the policy not a garage liability policy; and the point is in no way touched upon in the decision.

Later that question was argued and decided in *Culver v. Webb* (1944), 244 Wis. 478, 12 N. W. (2d) 731, upon which the commissioner relied in disapproving the policy and indorsement in the instant matter. In the latter case the court discussed the holding of the *Mauel Case,* saying (p. 489):

"The difficulty arises out of certain statements in the *Mauel Case* which seem to imply that there are only two varieties of policies, 'the privately owned car policy which is affected with the omnibus coverage, and the other known as public garage policy which is excluded therefrom.' In the *Mauel Case* the court said:

" 'In the privately owned car policy the car is definitely described as to motor, serial number, and type, and is issued in consideration of the payment of a fixed premium; a public garage policy does not insure any particular car and insures against liability imposed on a garage because of negligent handling of cars irrespective of ownership. These distinctions are important in construing the statute involved.'

"Although the foregoing may give some color to the contention that it was meant to hold that unless a liability policy describes a particular automobile and unless its owner is not the owner of a garage, the omnibus coverage is not imported into the policy, the court did not mean any such thing. The court simply described two general types of

policy: (1) Public garage policies which insure against liability arising from operation of the garage business including negligent handling of cars, irrespective of ownership, and (2) policies in which the specified owner of a specified car is insured against liability arising out of its operation. The mere fact that the holder of a liability policy happens to be the owner of a garage is not of any significance, and a statutory attempt to attach legal consequences to it would raise serious constitutional objections based upon a claim of arbitrary classification. Neither is the description of a particular automobile owned by the assured of essential importance. The statutory purpose is to draw a distinction between a policy issued to a garage to cover liabilities arising out of the general operations of the garage business and one issued to protect the owner of an automobile as such from liability for the operation of that automobile."

In the *Culver Case* the policy was issued to a garage owner and operator, and the coverage included the ownership, maintenance, and use of any automobile for any purpose in connection with the operation as an automobile dealer or repair shop "and also for pleasure use." The insurance company contended that the policy was a garage policy and therefore inclusion of the omnibus coverage provisions of sec. 204.30 (3), Stats., was not required. This court held (p. 490):

"In this case the insurance company by including a coverage of the owner of the garage for pleasure purposes has introduced into a standard garage policy the essential features of those policies which under sec. 204.30 (3), Stats., are required to include the omnibus coverage clause. Under definition of operations the policy purports to cover—
" 'The ownership, maintenance, or use of any automobile for any purpose in connection with the above-defined operations, and also for pleasure use.'
"The policy also contains a provision to the effect that—
" 'The terms of this policy shall apply separately to each automobile insured hereunder.'

"By assuming to insure Webb against liability arising out of the operation of his car for pleasure, the insurer, to the extent of this obligation, has created a 'privately owned car policy' and by operation of sec. 204.30 (3), Stats., the omnibus coverage clause is applicable to this engagement. Culver was an additional assured under the policy and within the limits of the policy he is entitled to coverage as such assured."

The policy in the instant case covers "use for nonbusiness purposes" of any automobile owned by or in charge of the insured and used principally in the operations of the business. Obviously, "nonbusiness purposes" have no more relationship to the garage business of the insured than the "pleasure use" involved in the *Culver Case*. The exception made in sec. 204.30 (3), Stats., is to "a public automobile garage, etc., . . . and the agents or employees thereof." There is no ambiguity in the language and no construction is necessary to say that the exception applies only in the case of a garage *business*. If a policy covers liabilities arising out of the operations of the garage business, it is a garage liability policy coming within the statutory exception; if it includes coverage for purposes other than business purposes, the exception does not apply and omnibus coverage must be afforded to the extent of the obligation arising from other than business use.

Appellant argues that the policy in question limits coverage with respect to nonbusiness use to automobiles used *principally* in the business operations of the insured, and this distinguishes it from the policy in the *Culver Case*. A reading of the "Definition of Hazards" quoted above will show that the policy covers nonbusiness use not only of automobiles used principally in the business but also, under classification (2), "any automobile owned by the named insured in connection with the above-defined operations for the use of the named insured, a partner therein, an execu-

tive officer thereof, or a member of the household of any such person." In any event, this argument of the appellant, whether erroneous or not, is immaterial. As pointed out above, appellant would be entitled to the statutory exemption only if its policy restricted coverage to liability arising out of garage business use. So long as liability for any use other than business is covered, the policy must contain the omnibus coverage clause.

It is argued that the commissioner's action in this case is a reversal of previous administrative interpretations. In its oral argument appellant called attention to *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. (2d) 249, 88 N. W. (2d) 352, headnote 3, which reads:

"In case of ambiguity, practical interpretation over a long period by the agency charged with administering an act or statute should be deemed controlling."

We have no argument with this principle. As pointed out above, however, there is nothing ambiguous about the statute, and if the previous ruling could be interpreted as the appellant claims, there being no ambiguity in the law, it cannot be given any weight as an administrative interpretation.

In this case the commissioner is not requiring that a "standard garage policy" contain the omnibus coverage clause. He is not dealing with a policy limiting coverage to liability growing out of garage operations, but with a policy affording coverage as well to liability growing out of non-business use.

Appellant further maintains that the action of the commissioner in preventing it from issuing the policy in question constitutes a denial of equal protection of the laws as guaranteed by the United States and Wisconsin constitutions, since appellant is only one of many insurance companies writing the identical policy in this state.

Throughout the proceedings herein this matter was referred to by all the parties as a "test case." Until a determination is reached on appeal the commissioner is restrained from enforcing his order against the appellant, and it would be unnecessary for him to assert a similar position against other insurance companies so long as the validity of his order in this matter is being challenged. As the trial court pointed out, there is nothing in the record to indicate that the commissioner has unfairly singled out the appellant for special adverse treatment. The only assumption we may indulge is that once this matter is finally determined, the commissioner will do his duty and enforce the law against all companies who are issuing policies contrary thereto.

*By the Court.*—Judgment affirmed.